1  **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                       FOR THE DISTRICT OF ARIZONA

8

9   Daniel B. Layton,                    )   CIV 13-2635-PHX-MHB
                                         )
10            Plaintiff,                  )   **ORDER**
                                         )
11  vs.                                  )
                                         )
12  Carolyn W. Colvin, Commissioner of the)
    Social Security Administration,       )
13                                       )
              Defendant.                 )
14  _____)

15        Pending before the Court is Plaintiff Daniel B. Layton's appeal from the Social

16  Security Administration's final decision to deny his claim for supplemental security income.

17  After reviewing the administrative record and the arguments of the parties, the Court now

18  issues the following ruling.

19                       **I. PROCEDURAL HISTORY**

20        Plaintiff filed an application for supplemental security income in August 2010,

21  alleging disability beginning August 1, 1993. (Transcript of Administrative Record ("Tr.")

22  at 26, 146-49.) His applications were denied initially and on reconsideration. (Tr. at 77-99.)

23  Thereafter, Plaintiff requested a hearing before an administrative law judge. (Tr. at 40-41.)

24  A hearing was held on May 29, 2012, (Tr. at 47-76), and on August 1, 2012, the ALJ issued

25  a decision finding that Plaintiff was not disabled (Tr. at 23-39). The Appeals Council denied

26  Plaintiff's request for review (Tr. at 1-6), making the ALJ's decision the final decision of the

27  Commissioner. Plaintiff then sought judicial review of the ALJ's decision pursuant to 42

28  U.S.C. § 405(g).

1

**II.  STANDARD OF REVIEW**

2        The Court must affirm the ALJ's findings if the findings are supported by substantial

3   evidence and are free from reversible legal error.  See Reddick v. Chater, 157 F.3d 715, 720

4   (9th Cir. 1998); Marcia v. Sullivan, 900 F.2d 172, 174 (9th Cir. 1990).  Substantial evidence

5   means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might

6   accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401

7   (1971); see Reddick, 157 F.3d at 720.

8        In determining whether substantial evidence supports a decision, the Court considers

9   the administrative record as a whole, weighing both the evidence that supports and the

10  evidence that detracts from the ALJ's conclusion.  See Reddick, 157 F.3d at 720.  "The ALJ

11  is responsible for determining credibility, resolving conflicts in medical testimony, and for

12  resolving ambiguities."   Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995); see

13  Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).  "If the evidence can reasonably

14  support either affirming or reversing the [Commissioner's] conclusion, the court may not

15  substitute its judgment for that of the [Commissioner]."  Reddick, 157 F.3d at 720-21.

16

**III.  THE ALJ'S FINDINGS**

17        In order to be eligible for disability or social security benefits, a claimant must

18  demonstrate an "inability to engage in any substantial gainful activity by reason of any

19  medically determinable physical or mental impairment which can be expected to result in

20  death or which has lasted or can be expected to last for a continuous period of not less than

21  12 months."  42 U.S.C. § 423(d)(1)(A).  An ALJ determines a claimant's eligibility for

22  benefits by following a five-step sequential evaluation:

23        (1)  determine whether the applicant is engaged in "substantial gainful activity";

24        (2)   determine whether the applicant has a medically severe impairment or
           combination of impairments;

25

26        (3)  determine whether the applicant's impairment equals one of a number of listed
           impairments that the Commissioner acknowledges as so severe as to preclude the
           applicant from engaging in substantial gainful activity;

27

28

1
2
(4) if the applicant's impairment does not equal one of the listed impairments, determine whether the applicant is capable of performing his or her past relevant work;

3
4
(5) if the applicant is not capable of performing his or her past relevant work, determine whether the applicant is able to perform other work in the national economy in view of his age, education, and work experience.

5   See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (citing 20 C.F.R. §§ 404.1520,

6   416.920). At the fifth stage, the burden of proof shifts to the Commissioner to show that the

7   claimant can perform other substantial gainful work. See Penny v. Sullivan, 2 F.3d 953, 956

8   (9th Cir. 1993).

9       At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful

10  activity since August 23, 2010 – the application date for benefits. (Tr. at 28.) At step two,

11  he found that Plaintiff had the following severe impairments: "a pervasive developmental

12  disorder, a bipolar disorder, a mood disorder, depression, an obsessive compulsive disorder

13  (OCD, a personality disorder, Asperger's syndrome, and Tourette's syndrome (20 CFR

14  416.920(c))."  (Tr. at 28.)  At step three, the ALJ stated that Plaintiff did not have an

15  impairment or combination of impairments that met or medically equaled an impairment

16  listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Commissioner's regulations. (Tr.

17  at 28-29.) After consideration of the entire record, the ALJ found that Plaintiff retained "the

18  residual functional capacity to perform a full range of work at all exertional levels, but he has

19  non-exertional limitations. He is capable of performing simple, unskilled work that does not

20  require interaction with the public or dependence upon co-workers in order to do the work."[1]

21  (Tr. at 29-33.)  The ALJ determined that Plaintiff has no past relevant work, but that

22  considering Plaintiff's age, education, work experience, and residual functional capacity,

23  there are jobs that exist in significant numbers in the national economy that Plaintiff can

24  perform. (Tr. at 34.)

25
26

27  _____

28      [1] "Residual functional capacity" is defined as the most a claimant can do after considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks.

1    Therefore, the ALJ concluded that Plaintiff "has not been under a disability ... since
2    August 23, 2010, the date the application for benefits was filed."  (Tr. at 34-35.)

3                                        **IV.  DISCUSSION**

4        In his brief, Plaintiff contends that the ALJ erred by: (1) failing to properly weigh
5    medical source opinion evidence; (2) failing to properly consider his subjective complaints;
6    and (3) failing to set forth a sufficiently specific residual functional capacity assessment.
7    Plaintiff requests that the Court remand for determination of benefits.

8    **A.    Medical Source Opinion Evidence**

9        Plaintiff contends that the ALJ erred by failing to properly weigh medical source
10   opinion evidence.  Specifically, Plaintiff argues that the ALJ improperly rejected the opinion
11   of treating psychiatrist, Michael Stumpf, M.D., relying instead upon the opinions from state
12   agency doctors who completed assessment forms as part of the initial and reconsideration
13   determinations that were based on limited record reviews.

14       "The ALJ is responsible for resolving conflicts in the medical record."  Carmickle v.
15   Comm'r, Soc. Sec. Admin., 533 F.3d at 1164.  Such conflicts may arise between a treating
16   physician's medical opinion and other evidence in the claimant's record.  In weighing
17   medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three
18   types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining
19   physicians, who examine but do not treat the claimant; and (3) non-examining physicians,
20   who neither treat nor examine the claimant.  See Lester v. Chater, 81 F.3d 821, 830 (9th Cir.
21   1995).   The Ninth Circuit has held that a treating physician's opinion is entitled to
22   "substantial weight."  Bray v. Comm'r, Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir.
23   2009) (quoting Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988)).  A treating physician's
24   opinion is given controlling weight when it is "well-supported by medically accepted clinical
25   and laboratory diagnostic techniques and is not inconsistent with the other substantial
26   evidence in [the claimant's] case record."  20 C.F.R. § 404.1527(d)(2).  On the other hand,
27   if a treating physician's opinion "is not well-supported" or "is inconsistent with other
28

- 4 -

1   substantial evidence in the record," then it should not be given controlling weight.  Orn v.

2   Astrue, 495 F.3d 624, 631 (9th Cir. 2007).

3       If a treating physician's opinion is not contradicted by the opinion of another

4   physician, then the ALJ may discount the treating physician's opinion only for "clear and

5   convincing" reasons.  See Carmickle, 533 F.3d at 1164 (quoting Lester, 81 F.3d at 830).  If

6   a treating physician's opinion is contradicted by another physician's opinion, then the ALJ

7   may reject the treating physician's opinion if there are "specific and legitimate reasons that

8   are supported by substantial evidence in the record."  Id. (quoting Lester, 81 F.3d at 830).

9       Since the opinion of Dr. Stumpf was contradicted by state agency physicians, as well

10  as, other objective medical evidence, the specific and legitimate standard applies.

11      Historically, the courts have recognized the following as specific, legitimate reasons

12  for disregarding a treating or examining physician's opinion: conflicting medical evidence;

13  the absence of regular medical treatment during the alleged period of disability; the lack of

14  medical support for doctors' reports based substantially on a claimant's subjective complaints

15  of pain; and medical opinions that are brief, conclusory, and inadequately supported by

16  medical evidence.  See, e.g., Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005); Flaten

17  v. Secretary of Health and Human Servs., 44 F.3d 1453, 1463-64 (9th Cir. 1995); Fair v.

18  Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

19      The ALJ considered the following objective medical evidence of Plaintiff's

20  impairments in his determination of Plaintiff's residual functional capacity assessment.

21      For the first nine months of 2010, Plaintiff saw Beatrice Yang, M.D., at Terros for

22  psychiatric care; his diagnoses were listed as OCD, pervasive developmental disorder,

23  bipolar disorder, Tourette's, and ADD with hyperactivity, and he was assigned a GAF score

24  of 55, indicating moderate symptoms.  (Tr. at 315, 292-93, 311-37, 467-74, 477-500, 507-14,

25  518-21 (containing duplicates).)   Plaintiff saw Dr. Yang approximately five times in

26  mid-2010.  (Tr. at 294-305, 307-09 (duplicated at Tr. at 447-49, 458-60, 501-06).)  At these

27  sessions, Dr. Yang noted largely normal mental status examination findings, (Tr. at 295, 301,

28

1   304, 307-08), aside from increased agitation and an inappropriate affect at one visit, (Tr. at

2   298), and Plaintiff's mother reported behavioral problems at a few visits, (Tr. at 294, 297).

3          Also during this time period, Plaintiff was hospitalized for a behavioral episode

4   involving an anger outburst and aggressive behavior toward a sibling.  (Tr. at 272-83,

5   346-59, 361-63.)  Notes show that he was discharged after five days with a euthymic mood,

6   broad affect, reality-based perceptions, fair-to-good judgment, intact memory, and was fully

7   oriented, with a GAF score of 55.  (Tr. at 274-75.)  Shortly after the hospitalization, Terros

8   notes show that Plaintiff discontinued treatment with Dr. Yang.  (Tr. at 573-83.)

9          The next month, in October 2010, Plaintiff began seeing psychiatrist Dr. Stumpf at

10  Mountain Health & Wellness.  On intake, Dr. Stumpf noted that Plaintiff had an intense

11  affect and poor concentration, judgment, and insight, but otherwise normal mental status

12  examination findings; Dr. Stumpf diagnosed mood disorder and personality disorder, and

13  assigned Plaintiff a GAF of 55.  (Tr. at 526-32.)

14         Plaintiff continued to see Dr. Stumpf approximately every three months through the

15  remainder of the relevant time period (to August 2012, the date of the ALJ's decision).  (Tr.

16  at 533-40, 545-48, 561-64, 583-86, 592-94, 600-03, 607-10, 615-17 (duplicated at Tr. at

17  566-59).).  Dr. Stumpf's treatment notes show normal mental status examinations, (Tr. at

18  534-35, 616-17), aside from an irritable and demanding mood at one visit, (Tr. at 538-39),

19  and poor insight and judgment at some visits, (Tr. at 546-47, 563-64, 602, 608-09).

20         In May 2009, Steven Shively, Ph.D., performed a psychological vocational evaluation.

21  (Tr. at 396-406 (duplicated at Tr. 408-18).)  Testing showed that Plaintiff had a full scale IQ

22  score of 85 (low average) and a personality assessment did not identify any clinically

23  significant concerns with regard to thought, experience, antisocial behavior, suspiciousness,

24  depression, or unusually elevated mood.  (Tr. at 400, 404.)  Dr. Shively indicated that

25  Plaintiff had average cognitive ability, verbal comprehension, perceptual reasoning,

26  vocabulary, verbal expression; good learning ability; very well developed fund of

27  information and pattern recognition and analysis; and limited working and immediate

28  memory, information retention, cognitive processing and manipulation, attention capacity,

1   motor coordination, and visual motor feedback and learning. (Tr. at 404.) Dr. Shively

2   diagnosed Asperger's disorder, bipolar disorder, and OCD, and assigned Plaintiff a GAF

3   score of 75, indicating no more than slight impairments. (Tr. at 404.)

4         In August 2009, Shirley Ripp, M.S., performed a vocational evaluation, during which

5   testing showed that Plaintiff adequately met competitive standards in all areas of work

6   functioning and exceeded competitive standards in cooperativeness, but Ms. Ripp noted that

7   Plaintiff may benefit from work adjustment training. (Tr. at 371-87.)

8         In February 2011, state agency physician Hubert Estes, M.D., reviewed Plaintiff's

9   medical records and opined that Plaintiff had some moderate limitations but retained the

10  ability to understand, remember, and carry out one and two step instructions and tasks in a

11  setting of low social contact. (Tr. at 82-86.) A state agency psychologist, Jaine

12  Foster-Valdez, Ph.D., later reviewed Plaintiff's medical records and agreed. (Tr. at 94-99.)

13        Finally, in May 2012, Dr. Stumpf completed a medical assessment of Plaintiff's

14  ability to perform work-related activities. (Tr. at 619-20.) He opined that Plaintiff had

15  moderate limitations in caring for personal habits, having constriction of interests, and

16  performing simple tasks, and moderately severe limitations in relating to others, performing

17  activities of daily living, understanding, carrying out, and remembering instructions,

18  responding to supervisors, co-workers, and work pressures, performing complex tasks,

19  performing repetitive tasks, performing varied tasks, and completing a normal

20  workday/workweek. (Tr. at 619-20.)

21        In his evaluation of the objective medical evidence, the ALJ discussed the state

22  agency doctors' opinions that, despite his mental limitations, Plaintiff could understand,

23  remember, and carry out simple instructions and tasks in a work setting with low social

24  contact. (Tr. at 32.) The ALJ found that, even though these two doctors did not treat or

25  examine Plaintiff, their opinions were consistent with the record as a whole, and thus largely

26  adopted their opinions in assessing Plaintiff's residual functional capacity. (Tr. at 32); see

27  20 C.F.R. § 416.927(d)(2)(i) (state agency medical consultants "are highly qualified

28  physicians, psychologists, and other medical specialists who are also experts in Social

1  Security disability evaluation"); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) ("The

2  opinions of non treating or non examining physicians may also serve as substantial evidence

3  when the opinions are consistent with independent clinical findings or other evidence in the

4  record." (citations omitted)).  The ALJ also considered Dr. Shively's opinion, (Tr. at 30), as

5  well as the vocational opinion of record indicating that Plaintiff could perform full-time work

6  (but would need conditioning because he complained of his feet hurting), including specific

7  jobs such as courtesy clerk and thrift store assistant, (Tr. at 32).  See Thomas, 278 F.3d at

8  957.

9        The ALJ then discussed Dr. Stumpf's opinion that Plaintiff had moderate or

10  moderately severe limitations in all areas of work-related functioning. (Tr. at 31.) The ALJ

11  reasonably discounted the opinion for a number of reasons.  (Tr. at 31); see Molina v. Astrue,

12  674 F.3d 1104, 1111 (9th Cir. 2012) ("In order to reject the testimony of a medically

13  acceptable treating source, the ALJ must provide specific, legitimate reasons based on

14  substantial evidence in the record." (citation omitted)).  First, the ALJ found that Dr.

15  Stumpf's opinion was inconsistent with his treatment notes.  (Tr. at 31); see 20 C.F.R. §

16  416.927(c)(4) (stating an ALJ must consider consistency).  Indeed, as the ALJ noted,

17  although Plaintiff experienced periods of anger that were reported to Dr. Stumpf by

18  Plaintiff's mother, (Tr. at 31), Dr. Stumpf's treatment notes show normal mental status

19  examinations, (Tr. at 534-35, 616-17), aside from an irritable and demanding mood at one

20  visit, (Tr. at 538-39), and poor insight and judgment at some visits, (Tr. at 546-47, 563-64,

21  602, 608-09), and Dr. Stumpf routinely assigned Plaintiff GAF scores of 55 to 60, indicating

22  moderate symptoms, (Tr. at 531, 586).  See, e.g., Tommasetti v. Astrue, 533 F.3d 1035, 1041

23  (9th Cir. 2008) (incongruity between treating doctor's questionnaire responses and her

24  medical records provided a specific and legitimate reason for rejecting the doctor's opinion

25  of claimant's limitations).  The ALJ also determined that Dr. Stumpf did not provide any

26  other comments or explanations on the form, aside from merely checking boxes.  (Tr. at 31);

27  see 20 C.F.R. § 416.927(c)(3) ("The more a medical source presents relevant evidence to

28  support an opinion, particularly medical signs and laboratory findings, the more weight we

will give that opinion."); Molina, 674 F.3d at 1111 ("We have held that the ALJ may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions." (citations and internal punctuation omitted)).  Finally, the ALJ questioned whether Dr. Stumpf's opinion was based on Plaintiff's subjective complaints rather than his own objective findings and was therefore given as an accommodation to Plaintiff.  (Tr. at 31); see Bray, 554 F.3d at 1228 (finding the ALJ could reject a treating doctor's work restrictions, which were drafted at the claimant's request and based on the claimant's subjective characterization of her symptoms – symptoms the ALJ found not entirely credible).

The Court finds that the ALJ properly weighed the medical source opinion evidence related to Plaintiff's impairments, and gave specific and legitimate reasons, based on substantial evidence in the record, for discounting Dr. Stumpf's assessment.  Therefore, the Court finds no error.

**B.    Plaintiff's Subjective Complaints**

Plaintiff argues that the ALJ erred in rejecting his subjective complaints in the absence of clear and convincing reasons for doing so.

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, the ALJ must engage in a two-step analysis.  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'  The claimant, however, 'need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'"  Lingenfelter v. Astrue, 504 F.3d 1028, 1036-37 (9th Cir. 2007) (citations omitted).  "Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'"  Id. at 1037 (citations omitted).   General assertions that the claimant's testimony is not credible are insufficient.  See Parra v. Astrue, 481 F.3d 742, 750 (9th Cir.

2007).  The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints."  Id. (quoting Lester, 81 F.3d at 834).

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities."  Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see Orn, 495 F.3d at 637-39.[2]  The ALJ also considers "the claimant's work record and observations of treating and examining physicians and other third parties regarding, among other matters, the nature, onset, duration, and frequency of the claimant's symptom; precipitating and aggravating factors; [and] functional restrictions caused by the symptoms ... ."  Smolen, 80 F.3d at 1284 (citation omitted).

At Plaintiff's hearing on May 29, 2012, Plaintiff was represented by an attorney. (Tr. at 47.)  Plaintiff testified that he lived with his parents and two brothers. (Tr. at 54.)  He stated that he had problems remembering, problems getting along with others, and problems controlling his anger. (Tr. at 58-61.)  Plaintiff also suffered from varying sleep cycles, sometimes sleeping several hours during the daytime, and other times hardly sleeping at all. (Tr. at 65-66.)

Having reviewed the record along with the ALJ's credibility analysis, the Court finds that the ALJ made sufficient credibility findings and identified several clear and convincing reasons supported by the record for discounting Plaintiff's statements regarding his pain and

---

[2]  With respect to the claimant's daily activities, the ALJ may reject a claimant's symptom testimony if the claimant is able to spend a substantial part of her day performing household chores or other activities that are transferable to a work setting.  See Fair, 885 F.2d at 603.  The Social Security Act, however, does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication.  See id.

limitations.   Although the ALJ recognized that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, he also found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not fully credible.  (Tr. at 29-33.)

In his evaluation of Plaintiff's credibility, the ALJ first referenced the objective medical evidence (noted above) detailing the numerous opinions regarding Plaintiff's work-related abilities.  The ALJ concluded that Plaintiff's statements were not credible "since they are not supported in their intensity or their severity by the objective medical evidence of record."  (Tr. at 30-33); see Carmickle, 533 F.3d at 1161 ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.") (citation omitted); Batson v. Comm'r of Social Security, 359 F.3d 1190, 1197 (9th Cir. 2004) (lack of objective medical evidence supporting claimant's allegations supported ALJ's finding that claimant was not credible); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (evidence of "conservative treatment" is sufficient to discount a claimant's testimony regarding severity of an impairment).

The ALJ additionally analyzed Plaintiff's "mild restrictions" in his activities of daily living finding that said activities also reduced Plaintiff's credibility.  (Tr. at 29-33.)  "[I]f the claimant engages in numerous daily activities involving skills that could be transferred to the workplace, an adjudicator may discredit the claimant's allegations upon making specific findings relating to the claimant's daily activities."  Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (citing Fair, 885 F.2d at 603); see Berry v. Astrue, 622 F.3d 1228, 1234-35 (9th Cir. 2010) (claimant's activities suggested a greater functional capacity than alleged). The ALJ found that Plaintiff "had no problem with his personal care, but occasionally needed reminders to shower.  He was able to fix simple meals, perform household chores, and shop for clothes, food, and personal items.  The claimant reported he could count change and handle a savings account.  His hobbies included reading, watching television and movies, and playing video games.  He did these activities daily and quite well.  He talked and joked with his friends and relatives, went to church weekly, could walk three fourths of a mile before

1   needing to rest for several minutes.  He could pay attention for many hours and could follow

2   writing instructions 'very well.'"  (Tr. at 33.)

3        While not alone conclusive on the issue of disability, an ALJ can reasonably consider

4   a claimant's daily activities in evaluating the credibility of his subjective complaints.  See,

5   e.g., Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175 (9th Cir. 2008) (upholding ALJ's

6   credibility determination based in part of the claimant's abilities to cook, clean, do laundry,

7   and help her husband with the finances); Burch v. Barnhart, 400 F.3d 676, 680-81 (9th Cir.

8   2005) (upholding ALJ's credibility determination based in part on the claimant's abilities to

9   cook, clean, shop, and handle finances).

10        In summary, the Court finds that the ALJ provided a sufficient basis to find Plaintiff's

11   allegations not entirely credible.  While perhaps the individual factors, viewed in isolation,

12   are not sufficient to uphold the ALJ's decision to discredit Plaintiff's allegations, each factor

13   is relevant to the ALJ's overall analysis, and it was the cumulative effect of all the factors

14   that led to the ALJ's decision.  The Court concludes that the ALJ has supported his decision

15   to discredit Plaintiff's allegations with specific, clear and convincing reasons and, therefore,

16   the Court finds no error.

17   **C.   Medical Source Opinion Evidence**

18        Plaintiff contends that the ALJ erred in failing to set forth a sufficiently specific

19   residual functional capacity assessment.

20        The ALJ explicitly found that Plaintiff could perform "simple, unskilled work [at all

21   exertional levels] that does not require interaction with the public or dependence on

22   co-workers in order to do the work."  The regulations define "unskilled work" as "work

23   which needs little or no judgment to do simple duties that can be learned on the job in a short

24   period of time."  20 C.F.R. § 416.968(a).  The regulations (SSR 85-15) further define

25   "unskilled work" as follows:

26        The basic mental demands of competitive, remunerative, unskilled work
     include the abilities (on a sustained basis) to understand, carry out, and
27   remember simple instructions; to respond appropriately to supervision,
     coworkers, and usual work situations; and to deal with changes in a routine
28   work setting.

- 12 -

1    A finding that Plaintiff was limited to "unskilled work" necessarily encompasses these

2 limitations.  Thus, contrary to Plaintiff's argument, the ALJ did set forth a sufficiently

3 specific residual functional capacity assessment of Plaintiff's ability to perform work when

4 the ALJ limited Plaintiff to simple, unskilled work with limited social contact.  (Tr. at 29.)

5 Plaintiff fails to indicate what else was required by the ALJ.

6    The Court finds no error.

7                                **V.  CONCLUSION**

8    Substantial evidence supports the ALJ's decision to deny Plaintiff's claim for

9 supplemental security income in this case.  Consequently, the ALJ's decision is affirmed.

10    Based upon the foregoing discussion,

11    **IT IS ORDERED** that the decision of the ALJ and the Commissioner of Social

12 Security be affirmed;

13    **IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment

14 accordingly.  The judgment will serve as the mandate of this Court.

15    DATED this 27th day of February, 2015.

16

17    _____

18                Michelle H. Burns
              United States Magistrate Judge

19

20

21

22

23

24

25

26

27

28